## SELECTION OF NEWSPAPER FOR ADVERTISING SHERIFF'S SALE.

Common Pleas Court of Lawrence County.

AUGUSTUS v. LYND ET AL.

Decided, October 22, 1908.

*Judicial Sales—Right of Sheriff to Select Newspaper for Advertising Sale—Master Commissioner—Appointment of, to Convey Property can only be Made, When—Sections 5399, 5393 and 4370-1.*

1. The appointment of a special master commissioner for the sale of specific property, together with the special reason or reasons why the sale should not be made by the sheriff of the county, should be embodied in and made part of the judgment, order, or decree ordering the sale.

2. The refusal, by the sheriff, of a request of the judgment creditor to insert the notice of sale in a particular newspaper is not a ground for the appointment of a special master commissioner to make the sale.

3. The statute makes it the duty of the sheriff to give public notice of the time and place of sale in a newspaper; and he may select any paper he pleases, subject only to the statutory requirement that the paper so selected be one printed and of general circulation in the county.

*J. O. Yates* and *T. A. Jenkins*, for the motion.

*A. R. Johnson*, contra.

CORN, J.

This cause is now before the court upon a motion by plaintiff for the appointment of a special master commissioner to appraise, advertise and sell, as upon execution, the property described in the petition.

On April 24, 1908, the plaintiff filed a petition in ordinary form, seeking a money judgment against the defendants, and the foreclosure of a mortgage, upon the real estate described, given to secure the debt. The defendants made default, and at the present term Mr. Jenkins, one of the counsel for the

plaintiff, asked and obtained a default judgment against the defendants for $2,200, with interest, and an order of foreclosure and sale of the premises described; at the same time making W. Wilson Lynd a party defendant and a summons was allowed to issue for him; the court's minutes made on the docket are these: "Judgment for plaintiff for $2,200 with interest; foreclosure and order of sale; W. Wilson Lynd made defendant; summons issued."

No journal entry of this judgment has been made except as to that portion making Dr. Lynd a party; by taking notice of the records of the court it appears that this judgment and order were taken on September 15, 1908, no mention being made at that time of a master commissioner; and so far as the court is advised it was then the intention that the sheriff should receive the order and make the sale in the ordinary way.

It appears that some differences arose between the plaintiff's counsel and sheriff as to what newspaper should make the publication of the notice of the sale, the attorneys claiming, and the sheriff denying, their right to designate the paper in which he should insert the notice of sale.

Thereupon, on September 29, 1908, upon the foregoing status of the case, the plaintiff's attorneys filed a motion for the appointment of a special commissioner to appraise, advertise and sell said premises, and for the following reasons:

First. That the sheriff of Lawrence county has unlawfully entered into an unlawful agreement with the Register Publishing Company of Ironton, Ohio, by virtue of which agreement the said sheriff has bound himself to place with the said Register Publishing Company for publication all of the publications, advertisements, legal notices, and other kindred business that comes through his hands by virtue of his office, thereby giving to the said Register Publishing Company a monopoly of the public printing of his office, and enabling said company to charge unreasonable and illegal fees for said work.

Second. By reason of said above agreement with the said Register Publishing Company, said company has charged un-

reasonable and illegal fees while the same services could have been procured from other publishing companies at a more reasonable rate.

Third. The different attorneys at this bar, including the undersigned, have on numerous occasions complained to the clerk and sheriff of the unreasonable and illegal charges made for publications by said Register Publishing Company, and have protested to the sheriff against his placing the publication of their clients in the hands of the said Register Publishing Company, but notwithstanding said complaints and protests the sheriff has placed, and still insists on placing, all publications of his office with said publishing company, although said publishing company continued to charge unreasonable and illegal fees, notwithstanding the complaints and protests of the attorneys, to the great prejudice and against the interest of parties to proceedings in the court.

Fourth. That the sheriff of Lawrence county insists that the publications in the above entitled cause must be given to the Register Publishing Company, over the protests of the attorneys for the plaintiff in the case and when the publications can be had from other publishing companies at a more reasonable rate.

This motion is verified by Mr. Yates, one of the attorneys.

The sheriff appears by counsel, and though filing no answer or denial, the matter is heard as though a denial of all the allegations had been entered.

If a master commissioner or special commissioner can be appointed, it must be by virtue of Revised Statutes, Section 5399. This section provides that real property may be conveyed by master commissioner or special master only in two cases:

First. "When by order or judgment in an action or proceeding a party is ordered to convey such property to another and he neglects or refuses to comply with the order or judgment, and the master is directed to convey on failure of the party to comply with the order." Well, that is clearly not applicable to this case.

Second. "When specific real property is sold by a master under an order of the court."

But the section further provides:

"No court within this state shall make or issue an order to any master commissioner for the sale of any real estate unless there exists some special reason or reasons why the sale of said real estate should not be made by the sheriff of the county where said decree or order shall be made; which said reason, or reasons, if the court shall find any such to exist, shall be embodied by said court in, and made part of its judgment, order, or decree ordering such sale."

Now the court made its judgment and decree ordering this sale fourteen days before the motion for the special master was filed or the question raised; the court, therefore, could not and did not embody the appointment of the special commissioner and the special reason, or reasons, if any existed, for such appointment, and why the sheriff should not make the sale, in its judgment ordering the sale.

In my judgment, then, this motion comes too late. The fact that no entry of this judgment had been made on the journal makes no difference, for such record is made for the purpose of preserving the evidence of what was actually transacted (*Lessee of Mitchell* v. *Eyster*, 7th O. [pt. 1], page 258); so that when the record is made showing correctly what was transacted, it will show that the judgment and order of sale did not embody the appointment of a special master and the special reason or reasons therefor, as provided in Section 5399.

This would seem to dispose of this question, but this motion is of such importance and containing, as it does, charges seriously reflecting upon the sheriff, an officer of this court, that I deem it proper, in fact almost obligatory upon me, to take up the whole question and dispose of it upon its merits, notwithstanding my notion of this section of the statutes.

Upon the evidence offered I find that the plaintiff has wholly failed to make out a single one of the charges she makes against the sheriff, and so far as this court is able to do so, it com-

pletely exonerates the sheriff from whatever imputation is contained in the motion.

Taking up the assignments *seriatim*:

The evidence shows conclusively that no such agreement as claimed in the first assignment, in the sense of an agreement, was ever entered into by the sheriff and the Register Publishing Company; the sheriff's sales book, which was in evidence, or inquired about, and exhibited, shows as a fact that very recently he has inserted notices of sales in another paper, notably, Star Building & Loan Co. v. Vinson, No. 9843, page 104; and the same plaintiff v. Davis, No. 9820, on page 102 of the sheriff's sales book; this conclusively shows, in my opinion, that the sheriff has not placed all of the publications of his office with the said Register Publishing Company, and does not insist on placing all of his publications with said publishing company. Besides, the sheriff and Mr. Moore, manager of the Register Publishing Company, with whom it is claimed the agreement was made, both swear most positively that no such agreement nor any agreement was, in fact, made.

The only evidence offered to prove the allegations of the motion relative to this alleged agreement is statements claimed to have been made by the sheriff. Every lawyer knows how this class of testimony is to be received and regarded (*Crowell v. Bank*, 3d O. S., 406, 413), and counsel who held this conversation must have honestly misunderstood the sheriff, or the sheriff did not make his meaning plain.

The second assignment is: "By reason of said above agreement with the Register Publishing Company, said company has charged unreasonable and illegal fees, while the same service could have been procured from other publishing companies at a more reasonable rate."

I have already found that no such agreement existed, and the evidence failed to show that such services could have been procured at a more reasonable rate. On the contrary Mr. Daughtery, manager of the *Star*, a witness offered to sustain this allegation, told the court that the type used by his company

and the manner of setting it will make precisely the same number of squares as that of the *Register*, and that his company charges precisely the same rate as the *Register*.

It is true that Mr. Yates says that he has an agreement with the *Ironlonian* to have his printing done at a discount, and that he thinks it would reach a publication by the sheriff in a case in which he is counsel; but from all the court could see at the hearing and learn from the evidence the *Ironlonian* was never seriously considered by any of the parties; and Mr. Yates states, also, that in all publications requiring insertion in two papers of opposite politics his impression was that the charges were the same in both papers.

As to the third assignment, I find that there is no evidence to show that prior to this controversy the sheriff had notice, nor had any protest been made to him, that the charges for printing made by the Register Publishing Company were not in accordance with the legal rate, nor that the publications were not properly measured. The sheriff testifies very positively about this, and while counsel is clear that complaint was made to the clerk (and that is where it should ·be made, or to the court), he does not claim that prior to this time any complaint was made to the sheriff.

There can be no question that the charges made by the *Register* in the several instances inquired about exceeded the amount which a correct measurement, at the legal rate, would permit them to charge, but the evidence is, that this arose from an honest mistake that their method of measurement brought about the same result as the correct method; as soon as they learned that they were wrong, they adopted the proper method of measurements. And these excess charges should have been corrected by a motion to retax costs.

The fourth assignment has been sufficiently covered by what I have said under the other assignments.

If charges in this or any other case exceed those allowed by law, the proper remedy is a motion to retax costs, and not an application for a special master commissioner to deprive the

sheriff of some of his duties, and the emoluments of his office.

Not only has the sheriff a right to the full emoluments of the office to which he has been elected by the people, but the county, under the salary law, is interested in having the fees earned by the sheriff covered into the officers' fee fund, and these rights should not be abridged without some good reason for it.

Now the real question here is whether a party to an action in whose favor a decree for the sale of specific property has been made has a right to require the sheriff to publish a notice of it in a newspaper designated by such party. And while counsel have filed their motion in the utmost good faith, it seems to me that this question could have been squarely raised upon an application to the court for that purpose.

On the question of the publication of notices of sale, except as to German newspapers, Section 5393, Revised Statutes, governs. I read such extracts as are applicable:

"Lands and tenements taken in execution shall not be sold until the officer causes to be given notice of the time and place of the sale, for at least thirty days before the day of the sale, by advertisement in a newspaper printed and of general circulation in the county;   *   *   *   but if there is published both a daily and weekly edition of the paper *selected* for such advertisement   *   *   *   it shall be sufficient to publish the advertisement in the daily once a week for five consecutive weeks," etc.

While the motion does not call for a decision of this question, the claim was made in the evidence of the attorneys for the motion of such right in their client, and the court will dispose of this question.

It is my opinion that Section 5393 casts this duty upon the officer alone, and he and his bondsmen are responsible for the proper discharge of that duty. The language is:

"Lands and tenements taken in execution shall not be sold until *the officer causes* to be given public notice of the time and place of the sale."

And further: "If there is published both a daily and weekly edition of the newspaper *selected* for such advertisement," etc.

Selected by whom? The selection must be made by some-body; and who is that somebody unless it be the officer whose duty it is to make the publication and see that it complies in all respects with the law governing the same? He has, in my opinion, a discretion in the matter, which is limited only by the statute which requires him to select "a newspaper printed and of general circulation in the county."

The approval of the publication and allowance of the costs are by Section 4370-1, Revised Statutes, cast upon the clerk or the court.

Section 4370-1. "That every publication of any advertise-ment, notice, or proclamation required to be published in a newspaper by a trustee, assignee, executor, administrator, re-ceiver, or *any other officer of the court,* or any party in any case or proceeding shall be approved by the court or clerk thereof, and allowed as a part of the costs in the case or pro-ceedings."

The view the court has taken of the sheriff's right in such matters seems to be sustained by the case of *The State, ex rel,* v. *Tual, Sheriff,* in the 16th Circuit Court Report, p. 680. This case was a proceeding in mandamus in form, but the circuit court found that it was in substance an action to enjoin the sheriff from making the publication in a certain paper, and the circuit court dismissed the action because it had no original jurisdiction in injunction cases. The facts of the case, briefly stated as shown by the petition, are that one Samuel A. Hunter, as treasurer, obtained a judgment against the defendant, Os-born, and a decree ordering the sale of lot number one in Boody's addition to the city of Toledo; that a precipe was filed ordering the sale and the clerk caused to be issued to the sheriff such order of sale; that the sheriff caused appraisal to be made and a notice of sheriff's sale to be published in the Toledo *Legal News.* It is claimed that the Toledo *Legal News* is not a news-paper printed and of general circulation in the county, but it is a technical publication solely for the use of the court and law-yers at the bar of said county devoted especially to the interests

of the legal profession; that the Toledo *Legal News* contains no matters of general interest, but is simply a record of the proceedings of the several courts of said county, etc.; that there are newspapers printed and of general circulation within said county in which said notice could have been published as required by law, but that the sheriff refused, though requested to do so, to publish said notices in any other publication than the Toledo *Legal News*; the prayer of the petition is that a writ of mandamus issue commanding the sheriff of Lucas county, that he proceed according to law to publish said notice of the sale of said lot in a newspaper printed and of general circulation within said Lucas county in accordance with the statute in such cases made and provided.

I may say that the answer admitted practically all the averments of the petition except that the Toledo *Legal News* is not a newspaper of general circulation in the county of Lucas.

I read from the opinion on page 684:

"The averment in the petition is that the paper in which the sheriff is proceeding to advertise is not a newspaper of general circulation within said Lucas county, and this court is asked to compel him—to require him—to proceed and advertise it, *not in any particular newspaper*, but in a newspaper of general circulation in the county, it being averred that the paper in which the sheriff is proceeding to advertise his notice of the sale is not a newspaper printed and of general circulation in the county."

And on page 685:

"But again—as already stated—this court, if it made an order under this petition, would have to make it in conformity to the prayer of the petition. And that is what? The court would have to require the sheriff to proceed to advertise in a newspaper printed and of general circulation within the county of Lucas. *This court would not undertake to point out a paper in which the sheriff should advertise.* But, practically, upon the statements contained in the petition and the grounds assigned for the interposition of the court, a mandate to advertise in any other paper than the Toledo *Legal News*, would be in effect equivalent to an injunction forbidding the sheriff to advertise

in the *Legal News,* for the reason, as is alleged, that it is not a newspaper printed and of general circulation in the county of Lucas. *The court can not under any view of the law it can regard, require the sheriff to advertise in any particular paper,* but it is asked to command the sheriff not to advertise in this particular paper."

This is not only the law, as I understand it, but so far as I have been able to learn it is the universal custom in Ohio for the sheriff to select the paper in which the advertising for which he is responsible shall be done.

In the opinion of the court the plaintiff shows no reason for the appointment of a special master commissioner and the motion is therefore refused.

If the plaintiff is not satisfied with the charges made by whatever paper is selected by the sheriff for this advertising, all her rights can be cared for by a motion to retax costs.